UNITED STATES *v.* BUHRING WATER PURIFYING Co. (No. 3777)[1]

United States Court of Customs and Patent Appeals, December 3, 1934

*Joseph R. Jackson,* Assistant Attorney General (*Daniel I. Auster* and *Ralph Folks,* special attorneys, of counsel), for the United States.
*Walden & Webster* (*J. L. Klingaman* of counsel) for appellee.

[Oral argument October 3, 1934, by Mr. Folks and Mr. Klingaman]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The Collector of Customs at the port of New York classified certain cylindrical blocks of various sizes, composed of about 95 per centum

[1] T. D. 47403.

ground wood charcoal, under the last part of paragraph 216, Tariff Act of 1930, and assessed the same with duty at 45 per centum ad valorem.

The importer protested said classification and assessment with duty, and claimed the merchandise to be dutiable as earthy or mineral substances under paragraph 214 or as a nonenumerated manufactured article under paragraph 1558 of said act.

Paragraph 214 provides for—

* * * articles, wares, and materials * * * composed *wholly or in chief value* of earthy or mineral substances, not specially provided for * * *. [Italics ours.]

The only question in the case is whether or not the merchandise is provided for in said paragraph 216. If it is, there is no dispute about the correctness of the collector's action.

Paragraph 216 of the Tariff Act of 1930 reads as follows:

PAR. 216. Carbons and electrodes, of whatever material composed, and wholly or partly manufactured, for producing electric arc light, if less than one-half inch in diameter or of equivalent cross-sectional area, 60 per centum ad valorem; if one-half inch or more in diameter or of equivalent cross-sectional area, 45 per centum ad valorem; electrodes, composed wholly or in part of carbon or graphite, and wholly or partly manufactured, for electric furnace or electrolytic purposes; brushes, of whatever material composed, and wholly or partly manufactured, for electric motors, generators, or other electrical machines or appliances; plates, rods, and other forms, of whatever material composed, and wholly or partly manufactured, for manufacturing into the aforesaid brushes; and *articles or wares composed wholly or in part of carbon or graphite, wholly or partly manufactured, not specially provided for, 45 per centum ad valorem.* [Italics ours.]

The merchandise consists of filter blocks in sizes 6 inches by 9 inches, 4 inches by 5 inches, and 4 inches by 4 inches. The Government concedes that the blocks are used for water filtration. It is shown by the record that the basic material is ground charcoal, and that the blocks in one of the four entries are composed of 95 per centum charcoal and 5 per centum clay binder, and in another one of such entries, 96 per centum charcoal and 4 per centum clay binder. The exact amount of charcoal in the blocks in the other two entries is not shown. It is, however, shown in the answers of the appraiser that the blocks in such entries are wholly or in part of carbon. No point is made that the blocks in the latter two entries contained either more or less carbon than the blocks in the two entries first referred to. It is shown that wood charcoal is crushed to the degree of fineness required, and a clay binder added; that while in a plastic mass, it is pressed into molds, and that it is then extracted from the molds and placed into a retort or furnace and fired.

The importer contends first that the basic ingredient, charcoal, is not carbon; that charcoal and carbon have been differentiated for

tariff purposes. Second, that paragraph 216, *supra*, is an electrical paragraph and was not intended by Congress to cover imported merchandise even though wholly or in part of carbon which is used for water filtration.

The majority of the trial court, following its decision in *Berner v. United States*, T. D. 44536, one judge dissenting, held that the merchandise not being produced for electrical purposes, was not provided for in paragraph 216, and was dutiable at 20 per centum ad valorem under paragraph 1558, from which judgment the Government has here appealed.

The first question we think requires but little consideration. The definitions of "carbon" and "charcoal" found in Webster's New International Dictionary (1933) are as follows:

carbon 1. *Chem.* An elementary substance occurring native as the diamond and also as graphite or black lead, and forming a constituent of coal, petroleum, asphalt, limestone and other carbonates, and all organic compounds. Symbol, $C$; at. wt., 12.005. Carbon is also obtained artificially as lampblack, as charcoal, and as coke, in varying degrees of purity. * * *

charcoal 1. Amorphous carbon prepared from vegetable or animal substances; esp., coal made by charring wood in a kiln, retort, etc., from which air is excluded. It is used for fuel and in varous mechanical, artistic, and chemical processes.

The testimony of the witnesses is not out of harmony with said dictionary definitions. The merchandise, in our judgment, is composed of about 95 per centum carbon which is in the form of ground wood charcoal. There is no question but that the term "articles and wares composed wholly or in part of carbon", in said paragraph 216, when given its plain, ordinary meaning, properly and accurately describes the merchandise involved. While it is true that said paragraph mentions no article by name which is not, as far as we know, electrical in its character, there is nothing in this record, or nothing of which we may take judicial notice called to our attention, which would suggest that Congress intended the last provision in paragraph 216, which provision is general in character, to cover electrical articles only. There is certainly nothing in the context of the paragraph that would exclude an article described therein merely because it was not used for electrical purposes.

The rule of *noscitur a sociis*, which is, in effect, the rule relied upon by the importer herein, does not require a holding that the last provision of said paragraph 216 does not cover articles used for purposes other than electrical. We think this conclusion is warranted by the decisions of this court, two of which will be cited and briefly discussed—*United States* v. *Imperial Wall Paper Co.*, 14 Ct. Cust. Appls. 280, T. D. 41886, and *United States* v. *R. F. Downing & Co.*, 17 C. C. P. A. (Customs) 194, T. D. 43645. Both of these cases involved facts quite similar to the situation at bar. In the first one,

paragraph 1105 of the Tariff Act of 1922 was under consideration, which paragraph covered, among other things, " * * * mungo, woolen rags, and flocks * * *". The imported merchandise there at bar was "found to be wool ground into powder, to be used in the making of wall paper". The goods were classified for duty under paragraph 1119 of said act as a manufacture of wool not specially provided for. In support of the collector's classification the Government contended that the merchandise, being used for making wall paper, was not *ejusdem generis* with the articles *eo nomine* mentioned in the paragraph. This court, after finding that the imported flocks corresponded to the dictionary definition of that term, discussed the rules of *ejusdem generis* and *noscitur a sociis*, and held that the doctrine of *noscitur a sociis* was not controlling of the decision in that case, and said:

> The definitions of the word "flock", published before the passage of the Tariff Act of 1922, would indicate that when Congress used the word it knew that flocks were used for making wall paper as well as in connection with the manufacture of fabrics, and made no limitations or restrictions in connection with the use of the word.
>
> As far as this case goes it makes no difference what flocks are used for as long as they are flocks. The future may develop other uses for flocks, and, notwithstanding this fact, they would still be flocks and covered by the specific provision of paragraph 1105. The doctrine of *noscitur a sociis*, while helpful and to be given consideration in proper cases in construing language, the meaning of which is in doubt, is not controlling as against other considerations more persuasive. In the case at bar it cannot be given the effect of removing from the paragraph a plain term used, the meaning of which is not involved in doubt.

In the *R. F. Downing & Co.* case, *supra*, the question was whether or not jewelers' tweezers were dutiable under paragraph 399, under a provision for "* * * cuticle knives, corn knives, nail files, tweezers, hand forceps, and parts thereof [etc.]". The doctrine of *noscitur a sociis* was there urged as being controlling, and the trial court held that it was controlling and that under said doctrine the jewelers' tweezers could not be classified under said provision, which related to manicuring and pedicuring articles. After citing the *Imperial Wall Paper Co.* case, *supra*, and other authorities, this court, on appeal, said:

> We cannot legislate. If the Congress meant to restrict the meaning of the word "tweezers" in said paragraph 354, it might easily have done so. It is significant that in the other articles enumerated it did so; for instance, *cuticle* knives, *corn* knives, *nail* files, *hand* forceps. It did not say *hand* tweezers or *manicure* or *pedicure* tweezers, but simply "tweezers." This includes all tweezers, except such as are more specifically described as surgical instruments, or otherwise, and prevents the greater portion of such instruments from being relegated to the basket clause of manufactures of metal.
>
> There might be room for the application of the doctrine of *noscitur a sociis* if some of the other articles specifically named in this statute were in question; as, for example, "corn knives" or "nail files". These expressions are capable

of two meanings, and they are therefore ambiguous and uncertain. The court might well hold that the *noscitur* rule would apply in such cases and that the articles were to be restricted to knives and files used in manicuring or pedicuring. But for us to apply the rule in the case of "tweezers" would be akin to our construing the term "air rifles", as it appears in the toy paragraph of the Tariff Act of 1922, 1414, without any other considerations than the language of the paragraph itself, as applicable only to such air rifles as are used for toys.

What was said in the two last above-cited cases, we think, is applicable here. The provision of paragraph 216, *supra*, under consideration here, is not ambiguous and there is nothing to indicate Congress intended that the merchandise involved should be excluded from such paragraph. We, therefore, must hold that since it is more accurately and definitely described therein than elsewhere, it should be classified thereunder.

The judgment of the United States Customs Court is *reversed*.